UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DEBRA A. REESE,                          )
                                         )
                Plaintiff,               )
                                         )
v.                                       )          No. 3:18-CV-442-HBG
                                         )
ANDREW M. SAUL,[1]                       )
Acting Commissioner of Social Security,  )
                                         )
                Defendant.               )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 16].  Now before the Court are

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22].  Debra

A. Reese ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the

ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner").[2]  For the reasons

that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.     PROCEDURAL HISTORY

On May 12, 2015, Plaintiff filed an application for supplemental security income pursuant

to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging disability beginning on

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

[2] Defendant also filed a Motion to Stay [Doc. 9] in light of the lapse of appropriations to the Department of Justice, to which Plaintiff's counsel did not object.  As appropriations have been restored, Defendant's motion [**Doc. 9**] is **DENIED AS MOOT**.  The Commissioner subsequently filed his Answer to Plaintiff's Complaint [Doc. 10], as well as a transcript of the administrative record.  Accordingly, the Commissioner's Answer is considered timely-filed.

September 11, 2012, but subsequently amended at the disability hearing to May 12, 2015. [Tr. 12, 44 (amended onset date), 196–201]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 132]. A hearing was held on May 16, 2017. [Tr. 40–63]. On December 19, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 12–23]. The Appeals Council denied Plaintiff's request for review on August 21, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on October 10, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since May 12, 2015, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); and affective mood disorders (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that she can lift and/or carry (including upward pulling) 50 pounds occasionally and 25 pounds frequently; can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; can sit walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; can perform unlimited pushing/pulling (including hand/foot controls) within the exertional limitations; has no postural,

manipulative, visual, or communicative limitations; should avoid concentrated exposure to extremes of temperature, humidity, pulmonary irritants, and hazards (machinery, heights, etc.); can perform simple tasks; can tolerate occasional social interactions; and can adapt to occasional workplace changes.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on November 16, 1959 and was 55 years old, which is defined as an individual of advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 12, 2015, the date the application was filed (20 CFR 416.920(f)).

[Tr. 14–23].

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

    1. If claimant is doing substantial gainful activity, he is not disabled.

    2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

    3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

    5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence,

as she contends that the ALJ improperly weighed the medical opinions of record, including the opinions of treating physicians Jonathan Dewald, M.D. and Juli Williams, M.D., and the opinion of consultative examiner Jeffrey Summers, M.D. [Doc. 18 at 8–20]. Additionally, Plaintiff asserts that the ALJ erred by relying on vocational expert ("VE") testimony that was inconsistent with the *Dictionary of Occupational Titles* ("DOT"). [*Id.* at 3–6]. The Court will address Plaintiff's allegations of error in turn.

### A.    ALJ's Treatment of the Medical Opinions

Plaintiff challenges the ALJ's RFC determination that she could perform a range of medium work, claiming that it is not supported by substantial evidence, as the ALJ omitted limitations found in the opinions of her treating physicians—Dr. Williams and Dr. Dewald—as well as consultative examiner Dr. Summers.

### 1.    Opinions of Plaintiff's Treating Physicians

Plaintiff asserts that the ALJ improperly afforded little weight to Dr. Williams' opinion and rejected Dr. Dewald's opinion, and that these opinions from her treating physicians established that she was disabled.

Dr. Dewald provided a Medical Source Statement on April 5, 2017, wherein he stated that Plaintiff's impairments included back and leg pain from degenerative changes of her lumbar spine, as well as scoliosis, and that she would miss more than ten days of work per month due to her medical conditions. [Tr. 728]. Dr. Dewald found that Plaintiff could frequently sit, walk, and stoop, and that she could continuously stand and climb. [*Id.*]. Additionally, Dr. Dewald noted that Plaintiff needed to avoid significant exposure to particular environmental conditions in a workplace. [*Id.*]. Dr. Dewald opined that Plaintiff could frequently lift/carry up to five pounds, occasionally lift up to twenty pounds, and never lift above twenty pounds in an average workday;

as well as that she could frequently raise her left and right arms over her shoulders, occasionally use her hands for gross manipulation, and never use her hands for fine manipulation in a work environment on a full-time basis. [*Id.*].

Dr. Dewald characterized Plaintiff's pain level as moderately severe and noted that she would be off task 90% of the time due to her pain. [Tr. 729]. Dr. Dewald also found that Plaintiff would need to elevate her legs three to four times a day, for one to two hours, due to pain, swelling, or other reasons; that she had a reasonable medical need to lie down one to two times a day for three to four hours; and that she would need to take unscheduled breaks during an eight-hour workday beyond the normal break periods. [*Id.*].

In an undated letter endorsed by Dr. Dewald, Dr. Williams stated that Plaintiff was a patient at the UT Internal Medicine Clinic, and "[s]he has been diagnosed with scoliosis, degenerative disc disease, and anterolisthesis of the lumbar spine." [Tr. 768]. Dr. Williams opined that "[t]hese conditions are disabling to the point where she is not able to stand [or sit] for long periods of time," and that she has been treated by physical therapy with aquatherapy. [*Id.*]. Dr. Williams noted that Plaintiff has radicular pain in her legs, which was being treated with duloxetine, she takes meloxicam for her back pain, and that Plaintiff "is unable to hold a job due to her chronic back conditions." [*Id.*].

In the disability determination, the ALJ reviewed that "treatment records from UT Internal Medicine from January 2017 through May of 2017 include diagnoses of back pain; hypertension; depression; obesity; history of hepatitis; tobacco use disorder; [and] congestive heart failure." [Tr. 18]. Further, the ALJ detailed that Plaintiff was repeatedly counseled to stop smoking; that on March 7, 2017, her back pain had improved with physical activity, weight loss and increased duloxetine [Tr. 753]; as well as that on February 21, 2017, she denied numbness, weakness,

cramps, or pain [Tr. 751].  *See* [Tr. 18].

The ALJ then reviewed Dr. Dewald's opinion and found that it was "over-restrictive, and thus internally inconsistent."  [Tr. 21].  The ALJ found that the conclusions in Dr. Dewald's opinion from his four-month period of treatment, from January 17, 2017 to May 25, 2017, "are not consistent with the objective medical findings or with the treating progress notes of record."  [Tr. 20].  Specifically, the ALJ noted that a January 17, 2017 treatment note shows that Plaintiff had no clubbing, cyanosis, edema, or deformity in her extremities and had a full range of motion of all her joints.  [Tr. 20–21]; *see* [Tr. 758].  The ALJ therefore found that "there is nothing in Dr. Dewald's treatment notes to justify the exertional and manipulative limitations" in his opinion.  [Tr. 21].  Additionally, the ALJ noted that the conclusions in the opinion were tenuous, "patently sympathetic to [Plaintiff's] subjective complaints, and unsupported by the modest objective findings."  [*Id.*].  Lastly, the ALJ acknowledged Dr. Dewald's treating relationship with Plaintiff, although noting that it was "notably brief."  [*Id.*].  Ultimately, the ALJ did not accept "Dr. Dewald's conclusions with regard to" Plaintiff's RFC.  [*Id.*].

The ALJ also reviewed Dr. Williams' opinion and assigned it little weight.  [*Id.*].  First, the ALJ noted that, similar to Dr. Dewald, Plaintiff had a brief treatment history with Dr. Williams and "the course of treatment pursued . . . has not been consistent with what one would expect if the claimant were truly disabled."  [*Id.*].  The ALJ found Dr. Williams' opinion that Plaintiff's conditions were "disabling" was conclusory, "providing very little explanation of the evidence relied on in forming that opinion," as well as that opinions on the definition of disability are reserved to the Commissioner.  [*Id.*].

Plaintiff claims that the ALJ improperly weighed Dr. Dewald's and Dr. Williams' opinions, and this error was harmful, as Dr. Dewald's opinion that Plaintiff would miss ten days or more of

work per month due to her medical impairments, as well as would be off task for 90% of the day, on their own, establish her disability. [Doc. 18 at 9–11]. Further, Plaintiff asserts that Dr. Dewald's opinion that she would need to lie down one to two times a day and elevate her legs three or four times a day for one to two hours establishes that she would be unable to meet the basic demands of competitive employment. [*Id.*].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[3] When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

The Commissioner responds that the ALJ provided good reasons for not accepting the limitations set forth in Dr. Dewald's opinion and for affording little weight to Dr. Williams' opinion. [Doc. 22 at 11]. The Commissioner asserts that "[t]he ALJ discussed the nature and extent of the doctors' treatment relationship with Plaintiff, as well as their knowledge of Plaintiff's condition, treatment plan, treatment notes, and the objective medical evidence." [*Id.*]. Moreover, the Commissioner claims that the ALJ detailed how the objective medical evidence was inconsistent with Dr. Dewald's and Dr. Williams' opinions, as well as that Plaintiff's treatment record was inconsistent with disabling limitations. [*Id.* at 12].

First, Plaintiff asserts that the ALJ improperly "failed to give any consideration for the Agency's preferences for examining sources." [Doc. 18 at 11]. Specifically, with respect to Dr. Williams and Dr. Dewald, Plaintiff maintains that their opinions were entitled to enhanced weight as treating physicians, and the ALJ did not find that they did not have "reasonable knowledge" of Plaintiff's impairments under 20 C.F.R. § 416.927(c)(2). [*Id.* at 12].

Here, the Court finds that while the ALJ was not required to explain his consideration of each of the factors under the treating physician rule, he acknowledged Dr. Williams' and Dr. Dewald's treating relationship with Plaintiff. [Tr. 21]. However, for both physicians, the ALJ also detailed Plaintiff's brief treatment history. The length of a treatment relationship is an appropriate factor for the ALJ to consider under 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2). *See, e.g.*, *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Wilson*, 378 F.3d at 544); *cf. Cummings v. Comm'r of Soc. Sec.*, No. 3:11-CV-614, 2013 WL 1192817, at *5–6 (E.D. Tenn.

Mar. 22, 2013) (reasoning it could not be found that the ALJ "implicitly" discussed the relevant factors of the length of treatment relationship and the frequency of examination, as although the ALJ summarized the dates of treatment, "there is no indication that the ALJ considered those factors in determining what weight" to give to the opinion). Therefore, the ALJ noted that while he considered Dr. Williams' and Dr. Dewald's status as treating physicians, he also appropriately considered the length of the treatment relationship.

Next, Plaintiff challenges the ALJ's characterization of Dr. Dewald's opinion as "patently sympathetic," as the "ALJ does not cite to anything in support of his rationale that Dr. Dewald *improperly* relied on Plaintiff's reports, nor does any support exist in the record." [Doc. 18 at 15].

At the outset, the Court cautions against the language used by the ALJ suggesting bias on the part of Dr. Dewald, as "[s]uch a critique is not a 'good reason' for discounting a treating physician's opinion where the possibility of bias is not supported by any specific evidence in the record." *Price v. Comm'r of Soc. Sec.*, No. 3:13-cv-394, 2015 WL 93644, at *5 (S.D. Ohio Jan. 7, 2015), *report and recommendation adopted by*, 2015 WL 1402587 (S.D. Ohio Mar. 25, 2015). "The Sixth Circuit has faulted an ALJ for rejecting a treating physician's opinion solely because the ALJ found that the physician's motives were suspect, but the Court has not prohibited an ALJ from examining a treating physician's motives." *Leeson v. Comm'r of Soc. Sec.*, No. 2:14-cv-335, 2015 WL 5358891, at *13 (S.D. Ohio Sept. 14, 2015) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009); *Yates v. Colvin*, 940 F. Supp. 2d 664, 676 (S.D. Ohio, 2013)). However, despite the potential improper suggestion of bias, the ALJ's assignment of less than controlling weight to the opinion of a treating physician may still be upheld if the other listed reasons are supported by substantial evidence. *See Daniel v. Comm'r of Soc. Sec.*, 527 F. App'x 374, 375 (6th Cir. 2013) ("However, even with the possible sympathy removed from the analysis,

there is other substantial evidence to support the ALJ's decision on the treating physician's credibility."); *Sito v. Comm'r of Soc. Sec.*, No. 3:17-cv-1979, 2018 WL 4179457, at *26 (N.D. Ohio Aug. 31, 2018) ("While the Court finds this type of reasoning misguided and speculative, the ALJ did provide other 'good reasons' to support the rejection of [the treating physician's] opinion which are supported by substantial evidence.").

Additionally, an ALJ's rejection of a medical opinion "finding that [a plaintiff] was unable to work because the opinion drew from [the plaintiff's] subjective complaints of symptoms rather than objective medical evidence . . . constitutes a proper reason for denying controlling-weight status." *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 258 (6th Cir. 2016) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Here, the ALJ found that Dr. Dewald's conclusions were "tenuous, patently sympathetic to the claimant's subjective complaints, and unsupported by the modest objective findings." [Tr. 21]; *see Warner*, 375 F.3d at 390 ("Treating physicians' opinions are only given [controlling] deference when supported by objective medical evidence."). Moreover, in the preceding analysis, the ALJ detailed how Dr. Dewald's opinion was inconsistent with the medical record and Plaintiff's treatment notes. Ultimately, which the Court will subsequently discuss, the ALJ provided other good reasons for assigning less than controlling weight to Dr. Dewald's opinion.

Plaintiff claims that the ALJ failed to recognize that Dr. Williams' opinion, although "unquestionably short on detail," was endorsed by Dr. Dewald and should not be considered in a vacuum. [Doc. 18 at 14]. Moreover, Plaintiff asserts that the ALJ should have considered Dr. Williams opinion despite the fact that it opined on an issue reserved to the Commissioner, and under Social Security Ruling 96-5p, should have contacted Dr. Williams for clarification on her

opinion of disability.  [*Id.* at 15].

Opinions on issues reserved to the Commissioner, such as whether a claimant is "disabled," are not considered medical opinions "because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d)(1). Thus, opinions on issues reserved to the Commissioner, regardless of the opinion's source, "will not be given any special significance . . . ." *Id.*; *see* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").[4]  Nonetheless, such opinions cannot be ignored, and the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3.

The ALJ's finding that portions of Dr. Williams' opinion were on an issue reserved for the Commissioner is supported by substantial evidence.  Dr. Williams' opinion that Plaintiff was disabled, as well as that she was unable to hold a job due to her chronic back conditions, constitutes opinions on issues reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1).  However, the ALJ still considered the brief opinion as a whole and provided other reasons for finding that the opinion was not entitled to controlling weight.  Additionally, although the ALJ did not detail that Dr. Williams' letter was endorsed by Dr. Dewald, the ALJ noted that Dr. Williams was "one of the claimant's treating physician's [sic] at the UT Internal Medicine Clinic" and reviewed Plaintiff's treatment records with both Dr. Dewald and Dr. Williams.  Plaintiff has failed to establish how the ALJ's failure to note that Dr. Williams also endorsed the opinion constitutes an error under the treating physician rule.

---

[4] The Court notes that SSR 96-5 has been rescinded for claims filed on or after March 27, 2017.  *See* SSR 96-2p, 2017 WL 3928298 at *1 (March 27, 2017).

Plaintiff then asserts that the ALJ improperly found that Dr. Dewald's and Dr. Williams' opinions were not consistent with the record. [Doc. 18 at 15]. Plaintiff details that although the ALJ found that Dr. Williams' opinion was inconsistent with the medical record, the ALJ failed to mention Plaintiff's physical therapy or aqua therapy. [*Id.* at 15–16]. Plaintiff indicates that she was also prescribed gabapentin, meloxicam, duloxetine, and valsartan. [*Id.* at 16]. Further, Plaintiff claims that although Dr. Dewald and Dr. Williams noted diagnoses and treatment for her degenerative joint disease of the spine, the ALJ only mentioned this fact in his review of the opinions, "without any indication that this condition was both a diagnosed one and one for which Drs. Dewald and Williams provided treatment." [*Id.* at 17].

Next, Plaintiff alleges that the ALJ's summary of Plaintiff's treatment records was "highly selective." [*Id.*]. Plaintiff states that the ALJ failed to mention Plaintiff's treatment notes from Dr. Williams on April 5, 2017 which indicate that she was unable to walk "as much due to worsening shortness of breath," as well as that while she denied worsening of her back pain, she "remain[ed] unstable to stand for periods of time with the start of tingling and pain in her legs." [*Id.*]; *see* [Tr. 743]. Plaintiff also cites to a May 25, 2017 treatment note where Dr. Dewald details that she "denies worsening of her back pain but remains unstable to stand for periods of time with the start of tingling and pain in her legs." [Tr. 18]; *see* [Tr. 735]. Ultimately, Plaintiff claims that "these diagnoses, treatment regimes, and exam findings are probative evidence which support the treating opinions," but the ALJ improperly ignored this evidence and only mentioned the treatment notes suggestive of "improvement." [Tr. 18].

"[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *See Friend v.*

14

*Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010). "The ALJ may not pick and choose portions of opinions that support his findings without providing a clear analysis of why certain portions are rejected while other are accepted." *Perez v. Comm'r of Soc. Sec.*, No. 1:17-cv-2311, 2018 WL 5620094, at *14 (N.D. Ohio Oct. 30, 2018). However, the Court finds that the ALJ did not mischaracterize Plaintiff's treatment records; rather, he resolved inconsistent evidence in the medical record and properly detailed portions of the medical record that were inconsistent with Dr. Dewald's and Dr. Williams' opinions. The ALJ did not adopt the "opinion from the treating physicians that were consistent with his RFC—and rejected those that were not, without determining which opinions from those treating physicians were actually supported by the evidence in the record." *See Dejaeghere v. Comm'r of Soc. Sec.*, No. 15-10710, 2017 WL 1196369, at *9 (E.D. Mich. Mar. 31, 2017). Rather, the ALJ cited to portions of the medical record, including Plaintiff's treatment notes at the UT Internal Medicine Clinic, that were inconsistent with the opinions of Plaintiff's treating physicians.

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Lastly, Plaintiff asserts that the ALJ improperly found that her course of treatment is not what would be expected if she were truly disabled, and that while she does not have a lengthy treatment history with Dr. Dewald and Dr. Williams, "the record demonstrates that this is due to a lack of finances and insurance difficulties." [Doc. 18 at 19]. The Commissioner responds that Plaintiff had significant gaps in her treatment history, and that "the ALJ noted that when Plaintiff did receive treatment, it was essentially routine or conservative in nature, or both." [Doc. 22 at 13].

Social Security Ruling 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as that an "individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96–7p, 1996 WL 374186, at *7–8 (July 2, 1996). Plaintiff points to her testimony that she had difficulty finding a doctor due to her insurance, as well as that she received treatment through a church clinic. [Doc. 18 at 19].

The ALJ noted that Plaintiff had significant gaps in her treatment, as well as that when she had "received treatment, the treatment has been essentially routine and/or conservative in nature." [Tr. 20]. However, when discussing Dr. Williams' opinion, the ALJ found Plaintiff's "course of treatment pursued by [Drs. Dewald and Williams] has not been consistent with what one would expect if the claimant were truly disabled." [Tr. 21]. The Commissioner argues that Plaintiff's back pain was conservatively treated, and the ALJ noted that medication was effective in controlling these symptoms. [Doc. 22 at 13]. Further, the ALJ stated that Plaintiff's back pain improved with physical activity, weight loss, and duloxetine in March of 2017. [Tr. 18]; *see* [Tr. 753]. While Plaintiff also notes a reduced ability to walk in her treatment records due to shortness

16

of breath, a May 26, 2017 treatment note indicates that the prescribed Duloxetine "maintained a stable mood and control of her back pain symptoms." [Tr. 735].

Plaintiff fails to point to any treatment that she was unable to afford due to her financial constraints. *See Snell v. Comm'r of Soc. Sec.*, No. 14-13661, 2016 WL 8114213, at *6 (E.D. Mich. Apr. 29, 2016) ("While Plaintiff no doubt experienced some degree of financial restriction as a result of his work termination, the record shows that the lack of aggressive treatment was attributable to generally mild symptomology rather than financial constraints."), *report and recommendation adopted by*, 2016 WL 3049402 (E.D. Mich. May 31, 2016). Additionally, "there is no evidence that [s]he ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay." *Moore v. Comm'r of Soc. Sec.*, No. 14-1123, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (citing *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("However, there is no evidence Goff was ever denied medical treatment due to financial reasons.")). Therefore, the ALJ properly considered Plaintiff's conservative course of treatment in discounting Dr. Williams' and Dr. Dewald's opinions. *See, e.g., Lester v. Soc. Sec. Admin.,* 596 F. App'x 387, 389 (6th Cir. 2015) (finding the ALJ reasonably discounted a treating physician's opinion, in part, because the claimant was receiving conservative treatment).

Ultimately, the Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision to assign little weight to Dr. Dewald's and Dr. Williams' opinions and the ALJ's findings "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Here, the Court finds that substantial evidence supports the ALJ's assignment of little weight to Dr. Williams' opinion and rejection of Dr. Dewald's opinion. The ALJ noted how both opinions were

inconsistent with the medical record and Plaintiff's conservative treatment history, while also acknowledging their treatment relationship. Therefore, Plaintiff's assignments of error do not constitute a basis for remand.

## 2. ALJ's Treatment of Dr. Summers' Opinion

Plaintiff claims that the ALJ improperly afforded little weight to the opinion of consultative examiner, Dr. Summers. First, Plaintiff asserts that Dr. Summers' opinion establishes that she is disabled, and the ALJ failed to consider that Dr. Summers personally examined Plaintiff. [Doc. 18 at 9–11]. Plaintiff also claims that the ALJ improperly afforded little weight to the opinion because of Dr. Summers' "explicit use of the term 'sedentary,'" as well as that the ALJ's finding that the "description of work tasks far below medium exertion lacked preciseness is a dubious claim." [*Id.* at 13].

Dr. Summers examined Plaintiff on August 27, 2015, and noted his impressions of Plaintiff's COPD, probable hypertensive cardiomyopathy with no clinical evidence of cardiac decompensation or failure, as well as musculoskeletal joint pain. [Tr. 712]. Dr. Summers detailed Plaintiff's medical history, and that she was applying for disability due to problems with her heart, breathing, and joints, although she provided a ten-year history of poor exercise tolerance and shortness of breath. [*Id.*]. Dr. Summers noted that Plaintiff's condition persisted despite medical management and conservative, nonsurgical treatment, she continues to smoke in spite of her breathing difficulties, and she provided a longstanding history of pain and stiffness in multiple joint areas. [*Id.*].

On examination, Dr. Summers found that Plaintiff "maintains full range of motion at all joint areas," she "exhibits no clinical findings of active heart failure," and that "[s]he does have clinical evidence of mild to moderate COPD." [*Id.*]. Therefore, Dr. Summers opined that "it is

reasonable to expect [that Plaintiff] will have difficulty performing moderate to heavy exertion[,] as well as working in dusty condition, temperature extremes, high humidity, etc." [*Id.*]. Additionally, Dr. Summers found that Plaintiff "does appear capable of sedentary and low-to-moderate intensive level of activities in stable work environment[s] including performing clerical work, performing retail work, performing childcare, performing dispatch work, etc. for eight hours total in a single workday." [*Id.*].

In the disability determination, the ALJ reviewed Dr. Summers' opinion, and noted that the "opinion does not include precise work-related functional limitations." [Tr. 20]. Therefore, the ALJ found that "it is of dubious value in its utility for ascertaining the claimant's residual functional capacity for a disability evaluation," and afforded the opinion little weight. [*Id.*].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant.").

First, the Court finds that the ALJ properly afforded little weight to Dr. Summers' opinion because the opinion did not include "precise work-related functional limitations." [Tr. 20].

*See Carney v. Colvin*, No. 3:12-cv-744, 2015 WL 5089783, at * (M.D. Tenn. Aug. 17, 2015) (upholding an ALJ's assignment of little weight to an examining source who "fails to give specifics as to what actual limitations were imposed on [the claimant's] functional ability"); *see, e.g.*, *Robinson v. Colvin*, No. 3:12-0441, 2016 WL 3362081, at *10 (M.D. Tenn. June 17, 2016). Ultimately, Dr. Summers' opinion was conclusory as it did not provide any specific assessments to any work-related functional limitations. *See Garner v. Heckler,* 745 F.2d 383, 391 (6th Cir. 1984) ("The Secretary is not bound by a broad conclusory statement of a treating physician in making [a disability] determination."); *see, e.g.*, *Lee v. Berryhill*, No. 2:18-CV-214, 2019 WL 3559473, at *8 (E.D. Va. June 19, 2019) ("Dr. Waldrop's partial RFC did not address work-related functional limitations and was therefore entitled to little weight."), *report and recommendation adopted sub nom.*, *Lee v. Saul*, 2019 WL 3557876 (E.D. Va. Aug. 5, 2019); *Fordham v. Colvin*, No. 3:15-CV-464-J-MCR, 2016 WL 3398433, at *3 (M.D. Fla. June 21, 2016) ("Because Dr. Ravi did not include any specific limitations to any work-related functional limitations, her opinion that Plaintiff 'had physical limitations related to ongoing deterioration of the left hip,' was conclusory.").

Moreover, the Court does not agree with Plaintiff's characterization of Dr. Summers' opinion—that Plaintiff "was even *more limited*" than light work, which would have rendered her disabled under grid rule 202.04, as Dr. Summers "opined that Plaintiff appeared capable of 'sedentary' work, in contrast to the ALJ's RFC finding for medium work.'" [Doc. 18 at 10]. The ALJ was not required to afford controlling weight to Dr. Summers' opinion, and the ALJ properly stated his reasoning for affording the opinion little weight. Dr. Summers did not opine specific functional limitations that conflict with the ALJ's RFC determination; rather, Dr. Summers opined that Plaintiff appears capable of performing "sedentary and low-to-moderate intensive level of

activities in stable work environment[s]." [Tr. 712]. "Lastly, the ALJ was not required to specifically acknowledge any of the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), including Plaintiff's arguments that Dr. Summers personally examined Plaintiff. Nothing within 20 C.F.R. §§ 404.1527(c) and 416.927(c) mandates that every factor be explicitly addressed." *Fannin v. Berryhill*, No. 3:17-CV-236-DCP, 2019 WL 1434653, at *6 (E.D. Tenn. Mar. 29, 2019).

Plaintiff then claims that the ALJ's "rejection" of Dr. Summers' opinion "without simply *asking* for more precise terminology was contrary to the very nature of disability proceeding." [Doc. 18 at 14]. Section 416.919p(b) of the regulations states: "If the report is inadequate or incomplete, [the SSA] will contact the medical source who performed the consultative examination, give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 416.919p(b); *see also Houston v. Colvin*, 180 F. Supp. 3d 877, 889 (D.N.M. 2016) ("If the report of a consulting physician is inadequate or incomplete, the Social Security Administration will contact that doctor, give an explanation of its evidentiary needs, and ask the doctor to furnish the missing information or prepare a revised report.").

However, Plaintiff has not shown Dr. Summers' opinion to be "inadequate or incomplete." *See id.* While Plaintiff argues that the ALJ should have contacted Dr. Summers in order for the consultative examiner to provide functional limitations, Dr. Summers reviewed Plaintiff's medical history, reviewed her symptoms, and performed a physical examination. In *Houston*, the Court cited to the Tenth Circuit's analysis of "a similar provision applicable to treating physicians, [where] the Tenth Circuit noted, 'it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ

receives from the claimant's treating physician that triggers the duty.'"  180 F. Supp. 3d at 889–90 (quoting *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (internal quotations and brackets omitted)).

Ultimately, the ALJ did not find that Dr. Summers' opinion was inadequate, and Plaintiff has failed to cite to case law establishing that the failure to include functional limitations rendered the opinion inadequate. *See Houston*, 180 F. Supp. 3d at 890 (finding that although the consulting examiner did not provide specific functional limitations in his opinion, to which the ALJ assigned little weight, the ALJ was not required to re-contact him where the ALJ believed that the information he received was adequate for consideration); *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 857 (N.D.W. Va. 2009) (finding no need to re-contact the consultative examiner where he failed to note the claimant's degree of limitation, but his objective findings showed no limitations); *Mullins v. Astrue*, No. CIV.A.08-200-JBC, 2009 WL 982064, at *3 (E.D. Ky. Apr. 13, 2009) ("Unlike the cases cited by the plaintiff, there is no evidence in this case that Dr. Hubbard had any additional information that might have led to a different result or that Dr. Hubbard failed to obtain any testing required for a disability determination."). "The burden lies with the claimant to prove that she is disabled," and the ALJ has discretion to determine whether additional evidence is necessary. *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001).

Therefore, the Court finds that the ALJ appropriately considered Dr. Summers' opinion in the RFC determination, his assignment of little weight to the opinion was supported by substantial evidence, and the ALJ was not required to re-contact Dr. Summers.

### 3. Opinions of State Agency Consultants

Plaintiff also briefly challenges the ALJ's failure to "assign a weight to the opinions of the State Agency medical consultants," while finding that their opinions were consistent with the

medical evidence and adopting similar RFC findings. [Doc. 18 at 18–19 n.14].

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3).

"[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). In *Spicer*, the Sixth Circuit found that the ALJ had satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.* Similarly, in order for an ALJ to provide "'some indication' that he 'at least considered' that the source did not review the entire record . . . the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409).

In the present case, Plaintiff correctly asserts that the nonexamining state agency consultants did not review a complete medical record. However, the ALJ's decision reflects that he made an independent determination based on all the medical evidence and that his analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the dated nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to [Plaintiff's] spine that culminated in a cervical discectomy and fusion, the last medical event included in the record"). Further, Plaintiff fails to point to medical evidence in the record which the ALJ did not review.

Ultimately, an ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). The Court notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion when formulating a claimant's RFC. *See id.* at 728 ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'") (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). The Court finds that the ALJ appropriately considered the medical opinions of record, and that the ALJ's RFC determination is supported by

substantial evidence.

**B.     Step Five–Reliance on VE Testimony**

Plaintiff asserts that the ALJ did not perform his affirmative duty and inquire whether the VE's testimony was consistent with the DOT before relying on his testimony at step five of the disability evaluation.  [Doc. 18 at 3].  Specifically, Plaintiff maintains that this error was harmful, as the listed jobs of "food service worker" and "dining room attendant" require more than social interaction [*Id.* at 5], while a "position kitchen helper" requires frequent exposure to extreme heat, thus in conflict with the RFC limitation to "avoid concentrated exposure to extremes of temperature" [*Id.* at 6].  Plaintiff contends that the ALJ failed to identify or explain how these conflicts were resolved.

The Commissioner responds that the ALJ found in the disability decision that the VE's testimony was consistent with the DOT, and "[t]he description of the duties of the[  ] position in the DOT clearly demonstrates that [the] positions are consistent with the vocational expert's testimony."  [Doc. 22 at 18–19].  However, the Commissioner concedes that the ALJ did not question the VE about whether his testimony was consistent with the DOT.

Relying on VE testimony at step five, the AL concluded that Plaintiff could perform other work that exists in significant numbers in the national economy given the Plaintiff's RFC.  [Tr. 22–23].  During the hearing, the VE testified that an individual of Plaintiff's age, education, and work experience, with limitations identical to those in the RFC determination, could perform unskilled medium work, including the representative occupations of food service worker–hospital, "dining room and cafeteria attendants performing work such as dining room attendant," and as a kitchen helper.  [Tr. 59–60].  In the disability decision, the ALJ found that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the

information contained in the Dictionary of Occupational Titles."  [Tr. 23].

Social Security Ruling 00-4p addresses the use of VE testimony and other occupational resources in the evaluation of disability claims.  2000 WL 1898704, at *1 (Dec. 4, 2000).  The ruling explains that in making disability determinations, the agency relies "primar[ily] on the DOT . . . for information about the requirements of work in the national economy."  *Id.* at *2.  However, because "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," VE testimony is appropriate to resolve more complex vocational issues and "may be able to provide more specific information about jobs or occupations than the DOT."  *Id.* at *2–3.  The ruling imposes an affirmative duty on the ALJ to ask about any possible conflicts between the VE's testimony and information provided in the DOT.  *Id.* at *4.  If a conflict is identified by the VE, the ALJ must "obtain a reasonable explanation for the apparent conflict" before the ALJ can rely on the VE's testimony.  *Id.*; *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603–05 (6th Cir. 2009).

Although the ALJ failed to question the VE about whether his testimony was consistent with the DOT, such failure was harmless as Plaintiff fails to show an actual conflict between the VE's testimony and the DOT for the position of Dining Room Attendant.  *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 436 (6th Cir. 2016) ("[A]n ALJ's failure to inquire about a nonexistent conflict is necessarily harmless . . . . "); *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009)); *Kerr v. Comm'r of Soc. Sec.*, No. 2:13–CV–457, 2014 WL 4243771, at *3 (S.D. Ohio Aug. 26, 2014) ("[W]here the Plaintiff fails to demonstrate an actual conflict, courts have consistently held that an ALJ's failure to comply with SSR 00–4p's inquiry requirement constitutes harmless error.").

First, the Court finds that the Plaintiff "has failed to show that the job of dining room

attendant requires more than" occasional social interaction.  *See Mohorko v. Berryhill*, No. 2:16-CV-04933-GJS, 2017 WL 2938192, at *9 (C.D. Cal. July 10, 2017).  Plaintiff asserts that she could not perform this position, as it requires more than occasional social interactions, and "[t]he limitation to no more than two half hours of interaction per day with others is facially inconsistent with the DOT description of the food-service jobs identified by the ALJ."  [Doc. 18 at 5].

The DOT job description of a "Dining Room Attendant" includes:

> Performs any combination of following duties to facilitate food service: Carries dirty dishes from dining room to kitchen. Wipes table tops and chairs, using damp cloth. Replaces soiled table linens and sets tables with silverware and glassware. Replenishes supply of clean linens, silverware, glassware, and dishes in dining room. Supplies service bar with food, such as soups, salads, and desserts. Serves ice water and butter to patrons. Cleans and polishes glass shelves and doors of service bars and equipment, such as coffee urns and cream and milk dispensers. Makes coffee and fills fruit juice dispensers. May sweep and mop floors. May transfer food and dishes between floors of establishment, using dumbwaiter, and be designated Dumbwaiter Operator (hotel & rest.). May run errands and deliver food orders to offices and be designated Runner (hotel & rest.).

DICOT 311.677-018, 1991 WL 672696 (Jan. 1, 2016).  Additionally, the "DOT ranks the degree of interaction with people in each job type" on a scale from 0 (Mentoring) to 8 (Taking Instructions-Helping), going from the highest to the lowest level of functioning.  *See Kane v. Saul*, No. 3:18-CV-746 (HEH), 2019 WL 7562760, at *15 (E.D. Va. Aug. 20, 2019), *report and recommendation adopted by*, 2020 WL 130134 (E.D. Va. Jan. 10, 2020).  For the position of a dining room attendant, the interaction with others level function is defined as "7 – Serving," and rated as "Not Significant."  DICOT 311.677-018, 1991 WL 672696.

Ultimately, "[j]obs that rank the interaction-with-others function as 'not significant' adequately account for limitations on a claimant's ability to interact with the public, co-workers and supervisors."  *Kane*, 2019 WL 7562760, at *15.  Therefore, the Court finds that Plaintiff has failed to establish that the limitations in the RFC determination are in conflict with the position of

dining room attendant. *See Mohorko*, 2017 WL 2938192 at *9 ("Plaintiff, however, has failed to show that the job of dining room attendant requires more than occasional non-intense interaction with the public . . . the DOT classifies the level of contact with 'people,' as 'not significant.'").

A social interaction rating of "'not significant' is consistent with limitations to occasional, brief and superficial contact with co-workers, supervisors, and the public." *Parato v. Saul*, No. 4:18-CV-01062-NCC, 2019 WL 4305011, at *5 (E.D. Mo. Sept. 11, 2019) (citing *Alie v. Berryhill*, No. 4:16-CV-1353, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017)). "Numerous courts considering the degree of public interaction required by the 'Cafeteria Attendant' position have agreed that it demands no more than occasional interaction with the public." *Carrozza v. Comm'r of the Soc. Sec. Admin.*, No. CV 15-4737, 2016 WL 3901010, at *3 (E.D. Pa. July 19, 2016); *see, e.g.*, *Seamon v. Astrue*, 364 F. App'x 243, 249 (7th Cir. 2010); *Flaherty v. Halter*, 182 F. Supp. 2d 824, 851 (D. Minn. 2001); *Strickland v. Astrue*, No. 10-306, 2011 WL 4048985, at *10 (M.D. Fla. Sept. 13, 2011) (noting that although "cafeteria attendant" position required "serving," "[n]othing has been presented to the Court that suggests more than occasional interactions are required"); *Arsenault v. Astrue*, No. 09-269-P-H, 2009 WL 982225, at *3 (D. Me. 2009) (level of interaction denoted as "not significant" in DOT compatible with limitation to no significant or no more than occasional interaction with public, coworkers, and supervisors); *Hacker v. Astrue*, No. 07-1253, 2008 WL 4224952, at *5 n.1 (W.D. Okla. Sept. 10, 2008).

Accordingly, the VE's testimony that Plaintiff could perform the position of dining room attendant—even when limited to occasional social interaction and the other limitations within the RFC determination—does not conflict with the DOT. While the Court finds that the other two positions listed by the VE are arguably in conflict with the DOT, the availability of the dining room attendant occupation supports the ALJ's decision regardless of whether there are conflicts

28

with the other two positions. *See Simpkins v. Berryhill*, No. 2:16-CV-354, 2018 WL 1525823, at *5 (E.D. Tenn. Mar. 28, 2018) (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)). Here, the ALJ noted that approximately 315,000 dining room attendant jobs exist in the national economy [Tr. 23], which the Court finds constitutes a significant number of jobs. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) ("Even if we agree that the ALJ's finding included jobs precluded by [claimant's] exertional and non-exertional limitations, the ALJ's count of 2000 jobs [for one position] available in the third category withstands [claimant's] challenge."); *accord Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902 (6th Cir. 2016) (holding 6,000 in national economy jobs "fits comfortably" within what courts have found significant). Therefore, the ALJ's failure to question the VE about whether his testimony was consistent with the DOT was harmless, and the ALJ's allegations of error do not constitute a basis for remand.

## V.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **GRANTED**. The Commissioner's Motion to Stay [**Doc. 9**] will be **DENIED AS MOOT**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge

29